**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

JASON LAMONT SCOTT,

    Petitioner,

                            Civil Action No. 06-278

        v.                  Judge David S. Cercone
                            Magistrate Judge Amy Reynolds Hay

WARDEN DAVID DIGUGLIELMO,
et al.,

    Respondents.


**SUPPLEMENTAL REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION**

It is recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

**II.   REPORT**

Petitioner Jason Lamont Scott is a state prisoner incarcerated at the state correctional institution located in Graterford, Pennsylvania.  Currently pending before this court is his Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254.  (Doc. 4).

**A.   Relevant Procedural History**

On April 11, 1996, Scott shot and killed a housing complex security guard.  Randall T. Hetrick, Esquire, represented him at his subsequent criminal trial for murder and related charges.

In August 1997, the Honorable Dominick J. Motto of the Lawrence County Court of Common Pleas presided over a non-jury

1

trial.  The Superior Court of Pennsylvania described the relevant
evidence admitted at trial as follows:

> On April 1, 1996, [Scott] was present at the Crestview
> Gardens housing complex for the purpose of visiting a
> former girlfriend, Lavetta Fish.  Fish became alarmed
> when [Scott] assaulted her and showed her a handgun he
> was concealing under his shirt, and, as a result, Fish
> alerted Eric Upshaw, one of the housing authority
> guards.  Fish testified [Scott] was carrying his gun in
> a holster located under his left armpit.  As [Scott]
> sat on a chair outside of one of the units, Upshaw,
> accompanied by two other security guards, Andrew
> Anthony and Elonzo Waters, approached [Scott], told him
> that they were investigating a report that he was
> carrying a gun, and asked to speak with him privately.
> As the four men walked to the side of a building to
> speak, [Scott], who at all times concealed his hands
> underneath his t-shirt, became agitated, started to
> cry, and complained that he didn't want to go back to
> jail.  While the men conversed, a crowd of neighbors
> gathered and urged the officers to "let him alone," and
> urged [Scott] to run.  At one point, a few of the
> onlookers even pushed [Scott], encouraging him to run.
> As [Scott] began "trotting" away, the officers pursued
> him.  According to the testimony of Officer Anthony, as
> Officer Upshaw reached forward to touch [Scott's]
> shoulder, [Scott] turned and fired two shots,
> pointblank, at Upshaw's chest.  The record indicates
> that the first shot deflected off of Officer Upshaw's
> shield, but the second shot, fired as the officer fell
> forward, hit its mark, entering the officer's lung
> first, and then traveling through his heart to his
> abdomen, killing him.  A third bullet fired by [Scott]
> wounded Officer Anthony in the left arm.  Officer
> Anthony testified that had he not flinched, turning to
> his right and raising his left arm in front of his
> chest, [Scott's] bullet would have struck him in the
> left chest, near his heart.

(State Court Record ("SCR") at 1225-26).

Scott presented four witnesses in his defense.  Dorothy
Scott, his sister, testified that he had consumed a considerable
amount of alcohol and smoked marijuana on April 11, 1996 and that
he was under the influence of both substances at the time of the

shooting.  (SCR at 779-808).  Vaka Armstrong, a friend of Scott's, and Leonard Magliocca, a court-appointed private investigator, also provided testimony that Scott was intoxicated and high at the time of the shooting.  (SCR at 808-31).

Finally, Scott presented the testimony of Robert Wettstein, M.D., a court-appointed psychiatrist secured for the defense by Attorney Hetrick.  Wettstein explained that he interviewed Scott on two occasions (April 25, 1997 and July 18, 1997).  (SCR at 844).  In addition, Dr. Wettstein interviewed Dorothy Scott and reviewed discovery materials and other relevant documents provided to him by Attorney Hetrick, including records relating to prior psychiatric examinations of Scott.  When asked if Scott had the ability to premeditate and deliberate the murder of Upshaw, Dr. Wettstein stated: "My opinion is that based upon his stated use of alcohol, Valium and marajuana [sic], in addition to his level of impulsivity characteristic of his personality, that his ability to premeditate and deliberate at the time in question was substantially reduced."  (SCR at 852).

In his closing argument, Attorney Hetrick contended that Scott did not intend to shoot and kill Upshaw.  He stated that the excitement aroused by the crowd that gathered around Scott and the security officers agitated the situation such that Scott attempted to flee the scene and unwittingly fired on the officers as they pursued him.  (SCR at 953-71).  Attorney Hetrick also argued that the shooting was accidental, and that Scott was so

3

overcome by the influence of alcohol and drugs that he lost his ability to form the specific intent to kill.  (Id.)

Judge Motto rejected Scott's defense and found him guilty of first-degree murder, aggravated assault, carrying a firearm without a license, and recklessly endangering another person.  He subsequently sentenced Scott to serve an aggregate prison term of life imprisonment plus six to thirteen years.

Scott filed post-trial motions (SCR at 1140-47), which the court denied.  (SCR at 1164).  He then, through Attorney Hetrick, filed an appeal to the Superior Court in which he raised the following claims:

    1.    The evidence presented by the Commonwealth was not
          sufficient for a conviction of murder in the first
          degree because the evidence as a whole clearly
          showed that Scott did not have time to premeditate
          or deliberate prior to firing on the security
          officers;

    2.    The trial court erred in denying Scott's omnibus
          motion to have the Lawrence County District
          Attorney's Office removed from the case; and,

    3.    The trial court erred in not granting Scott's
          motion for change of venue and/or venire.

(SCR at 1184-1201).

The Superior Court denied Scott's appeal in a memorandum order dated March 31, 1999.  (SCR at 1224).  On September 14, 1999, the Supreme Court of Pennsylvania denied his petition for allowance of appeal.  (SCR at 1266).  He did not file a writ of certiorari with the United States Supreme Court.  Accordingly, his judgment of sentence became final on or about December 14,

4

1999, the date on which the 90-day period to file a petition for writ of certiorari expired. (<u>See</u> SCR at 1361); <u>see also</u> <u>Swartz</u> <u>v. Meyers</u>, 204 F.3d 417, 419 (3d Cir. 2000).

On September 11, 2000, Scott filed a timely petition for collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 PA.Cons.Stat. § 9541 et seq. (<u>See</u> SCR 1358-62; 1368-71). Judge Motto appointed Phil Berezniak, Esq., to represent him.

In the PCRA proceeding, Scott claimed that Attorney Hetrick provided him with ineffective assistance of counsel for:

1.  failing to investigate exculpatory witnesses;

2.  failing to object to the introduction of Andrew Anthony's deposition testimony at trial, on the ground the Scott was not present at the deposition;

3.  failing to move to suppress evidence; and

4.  waiving Scott's right to a sentence report without Scott's authorization.

(SCR at 1286-1345, 1364-65). On November 4, 2002, Judge Motto presided over a hearing at which Scott and Attorney Hetrick testified. (SCR at 1286-1345).

Judge Motto ultimately denied PCRA relief and Scott appealed to the Superior Court. On March 3, 2005, the Superior Court affirmed. (SCR at 1368-71). The Superior Court's docket, of which this court may take judicial notice, reflects that Scott did not file a petition for allowance of appeal with the Supreme Court of Pennsylvania.

Scott began proceedings in this court, at the very earliest, on February 28, 2006, the date he signed the Petition for Writ of Habeas Corpus.  (Doc. 4).   Therein, he raises the following claims:

1.   His constitutional rights were violated because he was tried while incompetent;

2.   Attorney Hetrick provided him with ineffective assistance of counsel for:

    (a)   failing to investigate the charges and the crime scene;

    (b)   failing to interview the Commonwealth's witnesses;

    (c)   adopting the District Attorney's discovery as his own;

    (d)   refusing to investigate Scott's alleged incompetency and failing to move that he was incompetent to be tried based upon his alleged mental retardation;

    (e)   stipulating to incriminating evidence;

    (f)   failing to keep Scott informed;

    (g)   missing crucial filing dates for pretrial motions;

    (h)   failing to impeach perjured testimony;

    (i)   failing to retain independent mental health witnesses;

    (j)   failing to retain impartial investigators;

    (k)   failing to object to the introduction of Andrew Anthony's deposition testimony; and

    (l)   failing to object to incriminating statements because he was not read his Miranda rights; and,

3.    The trial court erred in permitting the
      prosecution to introduce perjured testimony.

(Doc. 4 and attached pages).

**B.    Legal Analysis**

This Magistrate Judge previously issued a Report and Recommendation in this case (Doc. 13) in which it was recommended that Scott's petition be denied as untimely under the statute of limitations set forth in The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") (codified in relevant part at 28 U.S.C. § 2244(d)).  The issue of the timeliness of the instant petition was raised sua sponte.  Day v. McDonough, 126 S.Ct. 1675 (2006) (district court sua sponte may raise issue of timeliness even where government has conceded timeliness); Long v. Wilson, 393 F.3d 390, 403 (3d Cir. 2004).  Accordingly, Scott was provided with the opportunity, through objections to that Report and Recommendation, to respond to the determination that the instant action was filed outside the limitations period.  On November 16, 2006, he filed his objections.  (Doc. 14).  Upon consideration of those objections, this revised Report and Recommendation is issued.

**1.    The Petition Should Be Denied Because It Is Untimely**

AEDPA requires, with a few exceptions not implicated here, that a state prisoner seeking federal habeas corpus relief file a petition in federal district court within one year after his state judgment becomes final.  28 U.S.C. § 2244(d)(1)(A).

Scott's judgment of sentence became final on December 14, 1999; therefore, the one-year period for filing his federal habeas corpus petition began to run on that date.  On September 11, 2000 (272 days later), Scott filed his PCRA petition.  That state petition statutorily tolled AEDPA's limitation period from September 11, 2000 through April 5, 2005 (the date Scott's PCRA proceedings concluded).[1]  28 U.S.C. § 2244(d)(1)(A).  After that date, AEDPA's limitations period began to run again, and Scott, having approximately 93 days remaining before AEDPA's statute of limitations expired, had until on or about Friday, July 8, 2005, to file a timely federal habeas petition with this court.

Scott did not initiate proceedings in this court until, at the very earliest, February 28, 2006.  Thus, even with the benefit of § 2244(d)(2)'s tolling provision, his habeas petition is untimely.

This Magistrate Judge previously noted that it did not appear, from a review of the state court record, that Scott is entitled to the extraordinary remedy of equitable tolling.[2]

_____

[1]  The Superior Court affirmed the denial of PCRA relief on March 3, 2005.  (SCR at 1368-71).  Scott had thirty days (until Monday April 5, 2005) in which to file an appeal to the Supreme Court of Pennsylvania.  The PCRA proceeding is deemed to be pending during this time (even though an appeal was not filed).  Swartz, 204 F.3d at 419.

[2]  The Court of Appeals for the Third Circuit has explained:

Equitable tolling is proper only when the principles of equity would make the rigid application of a limitation period unfair.  Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights.  The petitioner must show that he or she exercised reasonable diligence in investigating

However, he was provided with the opportunity, by way of objections to the prior Report and Recommendation, to direct the court to circumstances that might entitle him to equitable tolling.

In his objections, Scott contends that he is entitled to equitable tolling because he is mentally retarded and was incapable of understanding that his federal habeas corpus petition had to be filed within the statute of limitations period.  (Doc. 14 at 2).  In Nara v. Frank, 264 F.3d 310, 320 (3d Cir. 2001), the Court of Appeals held that "mental incompetence" may warrant equitable tolling in limited circumstances, but cautioned that "mental incompetence is not a per se reason to toll a statute of limitations[.]"  Instead, a petitioner must show that his mental incompetence affected his ability to file a timely habeas petition.  Id.

Here, Scott's allegations of mental incompetence are generic and lack specificity sufficient to explain his delay in pursuing his claims in federal court.  He has not explained why his alleged mental infirmities so affected him that he was not capable of taking the necessary steps to file a timely petition for writ of habeas corpus.  Thus, Scott has not alleged facts sufficient to show that sound legal principles as well as the

---

and bringing the claims.  Mere excusable neglect is not sufficient.

Miller v. New Jersey State Dept. of Corr., 145 F.3d 616, 618-19 (3d Cir. 1998) (internal citations, quotations, and punctuation omitted). See also Lacava v. Kyler, 398 F.3d 271, 275-76 (3d Cir. 2005).

interests of justice demand pursuit of the sparing doctrine of equitable tolling.

Based upon all of the foregoing, the record reveals that the instant petition for writ of habeas corpus was not timely filed in accordance with the directives in 28 U.S.C. § 2244(d).  For that reason, it is recommended that Scott's federal habeas petition be denied.

**2.   Additional Reasons To Deny the Petition**

Even if Scott's claims were not untimely under AEDPA's statute of limitations and this court were required to address each claim on the merits, Scott still would not be entitled to habeas relief.  As set forth below, most of his claims were not exhausted in state court and are now procedurally defaulted.  The few claims that were properly exhausted are without merit.

**(a)   Most of Scott's Claims Are Procedurally Defaulted**

As a general rule, a federal court cannot grant a writ of habeas corpus unless "the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b).  To comply with the exhaustion requirement, a Pennsylvania prisoner in a non-capital case first must have fairly presented his constitutional claims to the state's trial court and the Superior Court through direct appeal, PCRA proceedings, or other available procedures for judicial review.  See, e.g., O'Sullivan v.

Boerckel, 526 U.S. 838 (1999); Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996).

As the above-recited procedural history reveals, Scott failed to exhaust the majority of the claims that he is raising in the instant petition because he did not raise them on direct appeal or during the PCRA proceeding.  Specifically, he did not raise Claim 1, or Claims 2(b)-(j), or Claim 3 in state court.

Generally, a district court should require that a state prisoner return to state court for review of unexhausted claims. See Crews v. Horn, 360 F.3d 146 (3d Cir. 2004).  However, a federal court may excuse a petitioner's failure to exhaust in cases where the federal court can confidently predict that the state courts would not entertain review of the claims because such review would be barred by a state procedural rule, such as a statute of limitations.  Slutzker v. Johnson, 393 F.3d 373, 380(3d Cir. 2004); Whitney v. Horn, 280 F.3d 240, 249-53 (3d Cir. 2002); Lines v. Larkins, 208 F.3d 153, 162-66 (3d Cir. 2000). That is the case here, as any PCRA petition that Scott might now attempt to file would be untimely and unreviewable in the Pennsylvania courts.  See 42 PA.CONS.STAT. § 9545(b)(1).  Under such circumstances, exhaustion is considered "futile." Slutzker, 393 F.3d at 380; Whitney, 280 F.3d at 250; Lines, 208 F.3d at 162.

Importantly, however, when a petitioner cannot exhaust his claims due to futility, those claims are considered "procedurally

defaulted" in federal habeas court.  Id. at 380; Whitney, 280 F.3d at 252; Lines, 208 F.3d at 166.  The procedural default doctrine applies to bar federal habeas review when a state court has declined or would decline "to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement."  Id. at 380-81 & 381 n.6 (internal quotation and citation omitted).  "The raison d'être for the doctrine lies in the fact that a state judgment based on procedural default rests on independent and adequate state grounds."  Id. at 381 (citations omitted).

Federal courts cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either (1) "cause" for the procedural default and actual prejudice resulting therefrom, or (2) that a fundamental miscarriage of justice will result if the court does not review the claims. McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Coleman v. Thompson, 501 U.S. 722, 750-51 (1991).

### (i)  Scott Has Not Established "Cause" For His Default

To demonstrate cause for a procedural default, the petitioner must show that some objective factor external to the defense impeded his efforts to comply with the State's procedural rule.  Murray v. Carrier, 477 U.S. 478, 488 (1986).  In the instant case, Scott appears to allege that the "cause" for his procedural default was his prior counsels' failure to raise the claims at issue before the state courts.  This contention,

however, is insufficient to sustain his burden of showing "cause"
for his default.

Attorney Hetrick's (trial and direct appeal counsel's)
alleged failure to raise the claims at issue is not the type of
conduct that satisfies the "cause" requirement.  As the Court of
Appeals has stated:

> Examples of "cause" that are "external to the defense"
> include interference by the state with the conduct of a
> defense or the previous unavailability of the factual
> or legal basis of a claim.  *Generally, "cause" cannot
> be based on the mere inadvertence of the petitioner or
> petitioner's counsel to take an appeal.  "[T]he mere
> fact that counsel failed to recognize the factual or
> legal basis for a claim, or failed to raise the claim
> despite recognizing it, does not constitute cause for
> procedural default."*  Id. at 486 [ ].  Indeed, in
> Coleman v. Thompson, 501 U.S. 722 [ ] (1991), the Court
> addressed . . . the effect of a litigant's inadvertent
> failure to take a timely appeal in a state collateral
> proceeding.  The Court, applying Murray v. Carrier,
> concluded that an "ignorant or inadvertent procedural
> default" does not satisfy the cause element of cause
> and prejudice.  Coleman, 501 U.S. at 752[.]

Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002) (emphasis
added); see also Lines, 208 F.3d at 166-67.[3]

Moreover, while the Supreme Court has recognized that
attorney error that constitutes ineffective assistance of counsel
within the meaning of Strickland v. Washington, 466 U.S. 688
(1984), may demonstrate "cause", Coleman, 501 U.S. at 753-54, in
the instant case Scott may not rely on Attorney Hetrick's alleged

---

[3]  It is further noted that Attorney Hetrick could not raise
claims of his own alleged ineffectiveness in state court.
Commonwealth v. Green, 709 A.2d 382, 384 (Pa. 1998).  As a result, he
cannot be faulted for failing to raise any of the claims set forth in
Claim 2.

ineffective assistance to avoid procedural default.  Concerned with comity and the prospect of placing federal courts in the anomalous position of adjudicating unexhausted state claims, the Supreme Court has required strict exhaustion of state remedies, even when counsel has been responsible for some procedural default.  See Murray, 477 U.S. at 488-89.  Thus, "a claim of ineffective assistance of [appellate] counsel [must] be presented to the state courts as an independent claim before it may be used to establish procedural default."  Id. at 489; see also Lines, 208 F.3d at 167.  This Scott failed to do.  Since he never properly placed before the state courts a claim of ineffective assistance of Attorney Hetrick for failing to raise the claims at issue, he may not rely on such a claim as "cause" excusing him from the procedural default.  See Lines, 208 F.3d at 167.

Additionally, Scott cannot rely on any claim that Attorney Bereznick's (PCRA counsel's) failure to raise the claims at issue during the PCRA proceedings establishes "cause."  To qualify as "cause" for a procedural default, an attorney's ineffectiveness must rise to the level of a Sixth Amendment violation.  Cristin, 281 F.3d at 420.  Because Scott has no Sixth Amendment right to representation during his PCRA proceedings, any alleged ineffectiveness on counsel's part during that proceeding cannot establish cause for the procedural default.  Id. (citing Commonwealth v. Finley, 481 U.S. 551 (1987); Coleman, 510 U.S. at 752).

14

**(ii)      Scott Has Not Demonstrated a Miscarriage of Justice**

Additionally, the miscarriage of justice exception does not excuse Scott's procedural default.  That exception only applies to a petitioner who demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]"  Murray, 477 U.S. at 496; Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001).  Actual innocence means factual innocence, not legal insufficiency, and the miscarriage of justice exception applies only in extraordinary cases.  Bousley v. United States, 523 U.S. 614, 623 (1998); Murray, 477 U.S. at 496.  A petitioner establishes actual innocence by asserting "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," showing that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt.  Hubbard v. Pinchak, 378 F.3d 333, 339-40 (3d Cir. 2004).  Here, Scott has not provided new, reliable evidence of his actual innocence.

In sum, Scott has procedurally defaulted a majority of his claims.  Thus, in addition to being time-barred, the court is precluded from reviewing the merits of those claims because they are procedurally defaulted.

**(b)  Scott's Remaining Claims Are Without Merit**

The only claims that Scott properly exhausted in state court are those federal constitutional claims that he raised during the

PCRA proceedings.  Providing Scott with all benefit of the doubt, it appears that the claims identified above as Claim 2(a), Claim 2(k), and Claim 2(l) are the only claims that arguably were raised during the PCRA proceeding and are currently being raised in the instant petition.  Because those claims were properly raised in state court, they are not procedurally defaulted.  Accordingly, they are the only claims this court may review on the merits.

> **(i)   Standard of Review**

AEDPA restricts a federal court's authority to grant relief where, as is the case with the three claims at issue, a state court has previously adjudicated and rejected the petitioner's federal constitutional claims.  28 U.S.C. § 2254(d).  In such cases, a federal court may only grant relief if the petitioner demonstrates that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]"  28 U.S.C. § 2254(d); see Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004).

The "clearly established Federal law" for reviewing claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984).  In that case, the Supreme Court of the United States held that in order to show counsel rendered constitutionally ineffective assistance, a petitioner

must demonstrate: (1) that counsel's performance was unreasonable;[4] and (2) that the deficient performance prejudiced the defense.[5]  See also Wiggins v. Smith, 539 U.S. 510, 521 (2003); Williams, 529 U.S. at 390-91.  Thus, the only issue this court must resolve is whether Scott has demonstrated that the Superior Court's adjudication of the three claims at issue resulted in a decision that satisfies the standard set forth in § 2254(d).

### (ii) Claim 2(a)

Scott claims that that Attorney Hetrick provided him with ineffective assistance of counsel for failing to investigate. The Superior Court noted that when directed to explain this claim at the PCRA hearing, Scott faulted counsel for not interviewing and calling for the defense an individual named Quentin Oldman. (SCR at 1370).  Scott explained that he was in Oldman's company soon after the shooting and asked him: "what did I do?"  (Id.) He contends that Oldman's testimony could have assisted his

---

[4]  To meet the first requirement of Strickland, the petitioner must establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.  466 U.S. at 688.  A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the petitioner must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy."  Id. at 689, 690-92.

[5]  To prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.

defense by demonstrating that he was intoxicated at the time of the shooting and did not understand what he had done. (Id.; see also SCR at 1303).

In rejecting this claim, the Superior Court held:

[Scott] suggests that [Oldman's] testimony … would have helped him at trial. [ ] On the other hand, [Scott] did not present any documentation, facts, or testimony from Oldman or any other witness. In short, [Scott] failed to establish at the hearing that any particular witness would have testified on [Scott's] behalf at trial.

(SCR. at 1370).

The Superior Court's decision easily satisfies AEDPA's standard of review. 28 U.S.C. § 2254(d)(1). Scott has failed to demonstrate that Oldman was available or willing to testify at the trial. And, in any event, his testimony would have been cumulative of that provided by the four defense witnesses (each of whom testified that Scott had consumed alcohol and drugs just prior to the shooting).

### (iii)    Claim 2(k)

Scott contends that Attorney Hetrick provided him with ineffective assistance of counsel for failing to object to the Commonwealth's introduction at trial of Andrew Anthony's deposition testimony. He argues that counsel should have objected on the basis that he (Scott) was not present at the deposition.

In denying relief on this claim, the Superior Court stated:

The record reflects that the trial court allowed Anthony's deposition testimony to be introduced at trial because Anthony was unavailable. At the PCRA

18

hearing, [Attorney Hetrick] testified that he did not
object because Anthony's deposition testimony was
actually helpful to the defense.  The PCRA judge, who
acted as the trial judge, agreed with this assessment.
Thus, the record reflects that [Scott] failed to
establish that counsel lacked any reasonable basis for
his action.  This claim fails.

In a related claim, [Scott] argues that counsel was
ineffective for failing to ensure that [he] was present
at Anthony's deposition.  First, we note that [Scott]
reviewed Anthony's deposition testimony before it was
introduced at trial.  More importantly, [Scott] has
failed to articulate any way in which his absence from
Anthony's deposition may have been harmful to his
defense.  Accordingly, this claim fails for lack of
prejudice.

(SCR at 1370.1-71 (internal citations and footnote omitted)).

The Superior Court's resolution of this claim also satisfies
AEDPA's standard of review.  At the PCRA hearing, Attorney
Hetrick articulated a reasonably strategic reason for not
objecting to the admission of Anthony's deposition testimony.
Moreover, Scott has failed to establish that he was prejudiced by
the introduction of the testimony.  As such, Scott is not
entitled to relief on this claim.

### (iv) Claim 2(l)

Scott claims that Attorney Hetrick's conduct was
constitutionally deficient because he failed to object to the
introduction of incriminating statements on the basis that Scott
was not read his Miranda rights.

This claim plainly has no merit.  Attorney Hetrick did file
a pre-trial motion to suppress oral statements Scott gave to
Detective David Kelly and other investigating officers because,

19

inter alia, Scott had not been provided with his <u>Miranda</u>
warnings.  (SCR at 149-57).  After conducting a hearing on the
matter (SCR at 159-48), the Honorable Glenn McCracken, Jr.,
denied the motion to suppress.  (SCR at 276-90).  Thus, as the
Superior Court held: "the record reflects that trial counsel did
file a motion to suppress, which was denied.  [Scott] has failed
to identify any particular additional evidence that should have
been part of that suppression motion, but was not.  Accordingly,
this claim fails."  (SCR at 1371).

* * *

In conclusion, Scott is not entitled to federal habeas
corpus relief on his claims.  All of his claims are barred by
AEDPA's statute of limitations.  In addition, most of his claims
are procedurally defaulted, and those claims that are not
procedurally defaulted are without merit.

**C.   Certificate of Appealability**

AEDPA provides that an appeal may not be taken from a final
order in a habeas proceeding in which the detention arises out of
process issued by a state court unless a certificate of
appealability has been issued.  A certificate of appealability
should be issued only when a petitioner has made a substantial
showing of a denial of a constitutional right.  28 U.S.C.
2254(c)(2).

In <u>Slack v. McDaniel</u>, 529 U.S. 473, 474 (2000), the Supreme
Court stated that "[w]hen the district court denies a habeas

20

petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Applying this standard here and after reviewing the record and pleadings in this case, jurists of reason would not find that it is debatable whether the Petition for Writ of Habeas Corpus commenced by Scott was filed within AEDPA's one-year limitation period.  Nor would jurists of reason find it debatable whether most of his claims are procedurally defaulted.  And, finally, Scott has not made a showing that he has been denied any of his constitutional rights. Accordingly, a certificate of appealability should be denied.

## III.  **CONCLUSION**

It is respectfully recommended that the Petition be denied and that a certificate of appealability be denied.  In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections

to respond thereto.  Failure to file timely objections may

constitute a waiver of any appellate rights.

Respectfully submitted,

/s/ Amy Reynolds Hay
AMY REYNOLDS HAY
United States Magistrate Judge

Dated: 19 December, 2006

cc:  The Honorable David S. Cercone
     United States District Judge

     Jason Lamont Scott
     DJ-7243
     SCI Graterford
     P.O. Box 244, Route 29
     Graterford, PA 19426


     Office of the District Attorney
     Lawrence County Government Center
     430 Court Street
     New Castle, PA 16101